## PHILADELPHIA RAPID TRANSIT CO. v. UNITED STATES.

### No. 15962.

District Court, E. D. Pennsylvania.

Sept. 5, 1934.

Dudley T. Easby, Jr., William R. Spofford, Frederic L. Ballard, and Ballard, Spahr, Andrews & Ingersoll, all of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., Andrew D. Sharpe, Sp. Asst. to Atty. Gen., Frank J. Wideman, Asst. Atty. Gen., and Charles D. McAvoy, U. S. Atty., of Philadelphia, Pa., for the United States.

KIRKPATRICK, District Judge.

The petitioner, Philadelphia Rapid Transit Company, filed with the Commissioner of Internal Revenue claims for refund of the entire amount of income and profits taxes paid by it for the calendar years 1917, 1922, and 1923, amounting in all to $591,906.62, and upon rejection of the claims brought this action to recover the taxes paid.

The petitioner contends that its income for the years in question was wholly exempt from taxation under the provisions of section 11 (b) of the Revenue Act of 1916 (39 Stat. 756, 766), and section 213 (b) (7) of the Revenue Act of 1921 (42 Stat. 227, 237). The two enactments are substantially alike, and the pertinent portions of section 213 (b) of the Act of 1921 may be taken as controlling the question involved. That section enumerates various kinds of income excluded from gross income and consequently exempt, among which is the following:

"(7) Income derived from any public utility * * * accruing to * * * any political subdivision of a State. * * *

"Whenever * * * any political subdivision of a State or Territory, prior to September 8, 1916, entered in good faith into a contract with any person, the object and purpose of which is to acquire, construct, operate, or maintain a public utility, no tax shall be levied under the provisions of this title upon the income derived from the operation of such public utility, so far as the payment thereof will impose a loss or burden upon such * * * political subdivision; but this provision is not intended and shall not be construed to confer upon such person any financial gain or exemption or to relieve such person from the payment of a tax as provided for in this title upon the part or portion of such income to which such person is entitled under such contract."

The facts material to the issue are the following: In 1907 the city of Philadelphia entered in good faith into a contract with the petitioner, the object and purpose of which was to operate and maintain and, possibly, to acquire the transportation system then serving it. Under this contract (article 6) the city shares with the stockholders equally in all net earnings of the company, payable in dividends, over and above a return of 6 per cent., cumulative from 1907, upon the paid-in capital stock of the company. There is a provision (article 9) for a sinking fund to be in the custody of the city into which monthly payments in graduated amounts are to be made by the company to be treated by the company as fixed charges, reducing the income applicable to dividends to the stockholders and to the city. When the sinking fund amounts to $5,000,000, the city may require it to be paid into the city

treasury and thereafter all payments upon it are to be made directly into the city treasury. Another provision (article 11) gives the city the option to purchase the petitioner's entire system on or after July 1, 1957, upon six months' notice, for an amount equal to the company's capital stock outstanding at that time; the sinking fund, if not already paid into the city treasury, to be available to the city for such purpose. Several other provisions give the city certain rights in the management and policies of the company, including the right to pass upon changes in its capital structure, leases, obligations, guaranties, extensions, additions, or betterments, requiring additional capital, also giving the city the right of representation upon the board of directors.

Without going more elaborately into the relations between the city and the petitioner (since the conclusion reached makes it unnecessary), I am satisfied that, by reason of the nature of the contract, the payment of these taxes from the income and profits of the petitioner will result in imposing a burden upon the city within the meaning of the act, and I so find. The fact is that both parties to the contract have an interest in the income in question. The utility's interest is direct and immediate. It collects it and uses it for its own purposes, and of course is "entitled" to its income under the contract. The city's interest is remote and contingent, but nevertheless is a real interest which taxation will burden, since taxation might operate to postpone the time when the city would be entitled to receive direct payments of money out of income or to decrease the value of the plant if, and when, the city came to acquire it under its option.

█ This brings us directly to the interpretation of the acts of Congress involved. The first paragraph of the quoted excerpt apparently was intended to exempt the city from taxation upon income which it actually receives (the words are "derived from" the public utility and "accruing" to the city) from public utility companies, a wholly unnecessary provision since no tax could be constitutionally imposed upon the city, but probably inserted to avoid possible misunderstanding of the succeeding paragraph. No one would question that income which is paid by a utility to the city, thus becoming part of the latter's revenue, must be free from taxation.

█ In enacting the second paragraph, Congress undoubtedly had in mind certain income of utilities in whose operations the city has some interest, but which income is not paid to the city and therefore does not become any part of the city's revenue. So far as the taxing power is concerned this was debatable ground, and it is quite clear that Congress meant to relinquish it in part, as will be seen, but by no means entirely.

The second paragraph has two clauses. The purpose underlying the first of these is to avoid any taxation of public utilities which adversely affects the city financially, and the words in which that thought is embodied are "so far as the payment thereof will impose a loss or burden upon such * * * political subdivision. * * *" If the paragraph ended at this point there would be no doubt, in view of the finding made, that the petitioner's income would all be exempt because the payment of any tax reduces it and, pro tanto, burdens the city. However, a second clause is added which appears to be in the nature of a construction clause or interpretation by the Legislature of its own enactment. It amounts to a declaration by Congress that, when, in the preceding clause, it exempted the utility's income of all taxation which would impose a burden upon the city, it did not mean to exempt such part of it as the utility was entitled to keep for itself. Or, to put it in another way, Congress was declaring that when, in the first clause, it said "no tax shall be levied * * * upon the income derived from the operation of such public utility, so far as the payment thereof will impose a * * * burden," etc., it meant, by "income derived," income derived by the city, paid to it, and thus a part of its revenues. And this regardless of whether the payment of the tax would actually impose a burden on the municipality or not. The language is too plain to admit of any dispute as to what it means—"this provision * * * shall not be construed * * * to relieve such person from the payment of a tax * * * upon the part or portion of such income to which such person is entitled under such contract." It is not to be questioned that the Legislature passing an act may declare its meaning and construction, and such declaration is binding by the courts. In this case, the construction clause may be the equivalent of an exception from the general terms of the first clause and, to that extent, in conflict with it, but from either point of view it supersedes it at all points of conflict.

The petitioner argues that the result of giving this effect to the last clause is to nullify the preceding one—to write it out

154

of the act entirely. It may be that the effective margin of the first clause left standing is not a wide one. But there might be situations which, even as so cut down, it would still govern. For example, suppose under the contract the utility was bound to expend a percentage of its own income for street repairs in relief of a municipal duty, which otherwise the city would have to perform at its own expense. I should say that the portion of its income so expended would not be "the part or portion of such income to which such person (the utility) is entitled under such contract," and I should also say that the taxation of that percentage of income would impose a burden upon the city and therefore would be exempt under the earlier clause. It may be that other illustrations could be found. The point is that the clauses can stand together and the later is not necessarily in hopeless conflict with the earlier. If it were, there might be a somewhat different question to decide, though I do not say that the same result would not be reached.

■ It follows from the construction adopted that the income in question here is taxable and the petition must be dismissed.

The agreed statement of facts and the supplemental additional statement of facts, and the facts set forth in the supplemental agreed statement of facts, are all adopted by the court as special findings of fact.

Petitioner's requests for conclusions of law are refused, and the petitioner's motion for judgment denied.

The respondent's motion for judgment is granted.